# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| IVAN MONTES, GUERRERO MONTES, & JESUS DOMINGUEZ, | § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:09-CV-82-KC |
| v. | § § | |
| THE COUNTY OF EL PASO, TEXAS, ALEX GAMBOA, Individually and in his Official Capacity as Former Constable of Precinct 6, El Paso County, Texas, MARIO RAMOS, Individually and in his Official Capacity as former Deputy Constable of Precinct 6, El Paso County, Texas, and NOE JUAREZ, Individually and in his Official Capacity as Deputy Constable of Precinct 6, El Paso County, Texas, | § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## ORDER

On this day, the Court considered "Defendant Mario Ramos' Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to FRCP Rule 12(b)(6) and Local Rule CV-12" ("Ramos's Motion") (Doc. No. 31); "Defendant Alex Gamboa's First Amended Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) and Local Rule 12" ("Gamboa's Motion") (Doc. No. 36); "Defendant Noe Juarez's First Amended Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) and Local Rule CV-12" ("Juarez's Motion") (Doc. No. 32); "Defendants' County of El Paso, Alex Gamboa, Mario Ramos and Noe Juarez, in Their Official Capacity, First Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (B)(6) [sic]" ("County's Motion") (Doc. No. 33); "Plaintiffs' Response to

Defendant Mario Ramos's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule CV-12" ("Plaintiffs' Ramos Response") (Doc. No. 47); "Plaintiffs' Response to Defendant Alex Gamboa's First Amended Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule CV-12" ("Plaintiffs' Gamboa Response") (Doc. No. 52); "Plaintiffs' Response to Defendant Noe Juarez's First Amended Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule CV-12" ("Plaintiffs' Juarez Response") (Doc. No. 53); and "Plaintiffs' Response to Defendants County of El Paso, Alex Gamboa, Mario Ramos, and Noe Juarez, in Their Official Capacity's First Amended Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)" ("Plaintiffs' County Response") (Doc. No. 51). For the reasons set forth herein, Defendants' Motions are **GRANTED** in part and **DENIED** in part.

I.  BACKGROUND

   A.  Factual Background

The following facts are derived from Plaintiffs' First Amended Complaint (Doc. No. 23). *See* Pls.' First Am. Compl. ¶¶ 5-10.

On or about the morning of February 28, 2008, Plaintiffs were travelling south in a 1995 Dodge Ram pick-up truck on San Elizario Road in El Paso, Texas. Plaintiff Ivan Montes ("Ivan"), then 22 years old, was driving the vehicle. His father, Guerrero Montes ("Guerrero"), then 66 years old, was sitting in the back passenger seat behind him. A family friend, Plaintiff Jesus Dominguez ("Dominguez"), then 68 years old, was sitting in the front passenger seat.

That same morning, Ramos, then a deputy constable, was travelling north in a marked patrol car. At approximately 9:30 a.m., Plaintiffs and Ramos passed each other around the 300 block of San Elizario. The vehicles passed each other without incident. Shortly after passing

Ramos, Plaintiffs slowed down and stopped at a stop sign. Ramos was nowhere to be seen. Plaintiffs continued to travel south, then slowed down and stopped at a second stop sign. Ramos was still nowhere in sight. When Plaintiffs reached the intersection of San Elizario and Alameda Avenue, Plaintiffs turned right onto Alameda and began travelling west.

Shortly after the turn, Ramos's vehicle approached Plaintiffs from behind. Ramos turned on his flashing lights and stopped Plaintiffs around the 12000 block of Alameda. Ramos then got out of his vehicle and approached Plaintiffs' vehicle. Ramos appeared to be angry and told Ivan, "The reason I stopped you was because you tried to run me off the road."

Ramos then asked Ivan, "Do you know what a one lane is?"

Ivan responded, "One street, two lanes, your lane and my lane."

Ramos then ordered Ivan to get out of the vehicle. Guerrero and Dominguez remained in the vehicle. Ramos escorted Ivan to the back of the truck on the driver's side.

Ramos again asked Ivan, "Do you know what a one lane is?"

Ivan repeated his earlier response.

Ramos then said, "You're being a dumb-ass; that is a dumb-ass answer."

Ramos then asked for a third time, "Do you know what a one lane is?"

Ivan again repeated his earlier response.

Ramos then said, "You are under arrest for being a dumb-ass."

Ramos then grabbed Ivan's right hand and began to pull Ivan sideways. As he was being pulled, Ivan's leg got caught on the front bumper of Ramos's patrol car. Ramos then grabbed Ivan by the collar, placed Ivan in a choke hold, and pulled him back up. As Ramos lifted Ivan up and pulled him back, Ivan began choking. Ivan then pushed forward to decrease the pressure on his windpipe so he could breathe.

Ramos continued to lift and choke Ivan and began yelling, "Resisting arrest!" and "Assault!"

Ramos then struck Ivan, knocking him to the ground. Ramos maintained his grip on Ivan's hand. Ramos then climbed on top of Ivan, who was now on the pavement, and began kicking Ivan's arm. Ramos then placed his left knee on top of Ivan's right arm while he was on the ground and began to punch him while continuing to kick him.

Dominguez saw Ramos beating Ivan and told Guerrero, who then got out of the vehicle. Guerrero then asked Ramos to stop beating his son. Ramos then kicked Guerrero with his right leg while still on top of Ivan. As a result of this kick, Guerrero went into shock. Ramos then raised Ivan's head up by grabbing his collar and bashed Ivan's face repeatedly against the pavement. Ivan blacked out. Ramos then grabbed Dominguez (who apparently had exited the truck), threw him to the ground and handcuffed him. Ramos then pointed his gun at Dominguez and told him to shut up and stay on the ground.

Around this time, other constables arrived. These constables asked what Dominguez was to be charged with.

Ramos said, "Fuck it – Charge him with interference."

All three Plaintiffs were arrested and put in jail. Ivan was charged with felony assault on a police officer, reckless driving, and resisting arrest. After being released from jail, Ivan required medical treatment. Guerrero was charged with felony assault on a peace officer and interference with public duties. Dominguez was charged with interference with public duties. All charges were ultimately dismissed by the El Paso District Attorney's office.

### B. Procedure

On March 4, 2009, Plaintiffs filed their Complaint (Doc. No. 1). On May 7, 2009, Plaintiffs filed their First Amended Complaint, in which they alleged that Ramos had a long

history of prior complaints for excessive force and false arrest at the Constable Precinct 6 office. Pls.' First Am. Compl. ¶¶ 13-15. The pleading alleged that Ramos had a similar history of complaints when he was a police officer at the City of Socorro Police Department and Anthony Police Department. *Id.* The pleading also alleged that Ramos left the Texas Department of Public Safety because of issues relating to failure to control his temper. *Id.* ¶ 14. Plaintiffs also allege that Defendants Gamboa and Juarez, who were Constable of Precinct Six and Sergeant of Precinct Six, respectively, were both personally involved in failing to screen, train, supervise, and discipline deputy constables in Precinct 6, including Ramos. *Id.* ¶¶ 16-21. The pleading further alleged that Gamboa and Juarez failed to investigate complaints against Ramos, including a complaint against Ramos for the above-alleged incident. *Id.*

Plaintiffs claim Defendants' actions violated Plaintiffs' rights to be free of excessive force and unlawful arrest pursuant to 42 U.S.C. § 1983 and the Fourth Amendment and Fourteenth Amendment to the United States Constitution. *Id.* ¶¶ 23-25. Plaintiffs claim that Defendants are liable for violating the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Plaintiffs also claim Defendants are liable for equal protection violations under Article I, §§ 3 and 3a of the Texas Constitution. *Id.* Plaintiffs also claim they are entitled to punitive damages because Defendants acted with gross negligence, specific intent, malice, and conscious indifference to Plaintiffs' harm. *Id.* ¶ 27.

Ramos filed his Motion to Dismiss on May 22, 2009. The remaining Defendants filed their Motions to Dismiss May 26, 2009. Plaintiffs filed their Response to Ramos's Motion June 26, 2009. Plaintiffs filed their Response to the County's Motion June 11, 2009. Plaintiffs filed their Response to Juarez's and Gamboa's Motions June 12, 2009.

## II. DISCUSSION

### A. Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true, and view them in a light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002)*; Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Still, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted); *see also Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("But a court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

Though a complaint need not contain "detailed" factual allegations, still the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation omitted). Thus, to survive a motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 569. Nevertheless, "a well-pleaded complaint may proceed even if its strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).[1]

**B.  Discussion**

    **1.  Plaintiffs' state constitutional claims**

---

[1] In both Defendants' Motions and Plaintiffs' Responses, all of the parties argue that a motion to dismiss should only be granted if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. The Court reminds the parties that this standard, set forth in *Conley v. Gibson* 255 U.S. 41, 45-46 (1957), is no longer good law and was definitively abrogated in favor of the above-described plausibility standard set forth in *Twombly*. *See Twombly*, 550 U.S. at 563 (describing the "no set of facts" language as "an incomplete, negative gloss on an accepted pleading standard" which has "earned its retirement"); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (affirming the application of the plausibility standard in *Twombly* to 12(b)(6) motions generally).

Defendants first argue that Plaintiffs' state constitutional claims for money damages should be dismissed, as Texas has no statutory remedies similar to 42 U.S.C. § 1983. *See* Ramos's Mot. ¶ 7; Gamboa's Mot. ¶ 10; Juarez's Mot. ¶ 10; County's Mot. ¶ 20. Plaintiffs state that they do not oppose dismissal of their state constitutional claims. Pls.' Ramos Resp. ¶ 16; Pls.' Gamboa Resp. ¶ 21; Pls.' Juarez Resp. ¶ 20; Pls.' County Resp. ¶ 19. Accordingly, Plaintiffs' state constitutional claims are dismissed.

### 2. Plaintiffs' other state claims

Other than Plaintiffs' state constitutional claim, it is unclear from Plaintiffs' First Amended Complaint whether Plaintiffs make other state claims. While the alleged facts appear to potentially support common law tort claims of assault and negligence, Plaintiffs never claim that Defendants are liable for assault under state common law, nor do Plaintiffs claim negligence, except in relation to their claim for punitive damages. *See* Pls.' First Am. Compl. ¶ 27. Indeed, the only grounds for relief that Plaintiffs specifically claim under state law are the state constitutional provisions for equal protection. See Pls.' First Am. Compl. ¶ 24.

There is further evidence in the parties' briefs that Plaintiffs limit their state claims to their now-dismissed state constitutional claims. For example, Defendants Ramos, Gamboa and Juarez argue that they are protected by the Texas law doctrine of official immunity for all claims against them in their individual capacities. Ramos's Mot. ¶ 8; Gamboa's Mot. ¶ 11; Juarez's Mot. ¶ 11. Plaintiffs respond to these arguments by stating that such arguments are inapplicable because official immunity does not protect Defendants from federal claims of excessive force and false arrest. *See* Pls.' Ramos Resp. ¶ 16; Pls.' Gamboa Resp. ¶ 21; Pls.' Juarez Resp. 20. Similarly, the County argues that all of Plaintiffs' state tort claims should be dismissed against the County and the individual Defendants in their official capacities because the state has not

consented to suit, and because no prior notice was given to the state pursuant to state law. County's Mot. ¶¶ 15-23. Plaintiffs fail to respond to these arguments.[2]

Given Plaintiffs' failure to respond to any of Defendants' arguments regarding potential state causes of action other than Plaintiffs' state constitutional claims, and given the ambiguity in Plaintiffs' first Amended Complaint regarding the existence of additional state claims, the Court views Plaintiffs' First Amended Complaint as seeking no relief under state law other than for violations of the Texas state constitution. Having consented to the dismissal of their state constitutional claims, the Court views Plaintiffs' First Amended Complaint as containing only federal claims.

### 3. Plaintiffs' federal equal protection claims

The County next argues that Plaintiffs' Fourteenth Amendment equal protection claims must fail because Plaintiff has alleged no set of facts that would entitle Plaintiffs to relief. County's Mot. ¶ 12. "The Equal Protection Clause 'commands that no States shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.'" *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 139 (5th Cir. 2009) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "We inquire about equal protection of the laws 'only if the challenged government action classifies or distinguishes between two or more relevant groups.'" *Id.* (quoting *Outb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993)). To maintain an equal protection claim, Plaintiffs must allege that they "received treatment different from that received

---

[2] Even if Plaintiffs had responded to these arguments, any state law claims against the County stemming from the intentional torts of its actors would be dismissed. As the County argues, any claim against the state or a state unit must be predicated upon the state's consent to suit. *See Univ. of Texas-Pan American v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)). The Texas Tort Claims Act does not waive sovereign immunity for intentional torts. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (Vernon 2009 Electronic update) ("This chapter does not apply to a claim . . . arising out of . . . any . . . intentional tort[.]"); *Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001); *Limon v. City of Balcones Heights*, 485 F. Supp. 2d 751, 756 (W.D. Tex. 2007).

by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (citing *Cleburne*, 473 U.S. at 439-40).

Plaintiffs fail to address the County's arguments regarding their equal protection claims. Moreover, Plaintiff has alleged no facts from which the Court can adduce a claim that Defendants violated their rights to equal protection under the Fourteenth Amendment. Specifically, Plaintiffs have failed to allege facts showing Defendants treated Plaintiffs differently from similarly situated individuals, or that Defendants acted with discriminatory intent. Accordingly, Plaintiffs' equal protection claims are dismissed.

### 4. Plaintiffs' Fourth Amendment claims against Ramos

Ramos next argues that he is shielded from any liability for his alleged actions by the doctrine of qualified immunity. Ramos's Mot. ¶¶ 5-6.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *Pearson v. Callahan*, --- U.S. ----, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Id.* (citing *Clendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)). "To discharge this burden, 'a plaintiff must satisfy a two-prong test."[3] *Id.* (quoting *Atteberry v. Nocona Gen.*

---

[3] From 2001 to early 2009, this two-pronged test was mandatory. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, earlier this year, the Supreme Court overruled the mandatory nature of the "*Saucier* protocol" and left it to a district court's "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed in light of the circumstances of the particular case at hand." *Pierson*, 129 S. Ct. at 818. The Supreme Court added that the *Saucier* protocol continued to be a viable sequence by which to determine issues of qualified immunity in certain cases. *Id.*; *see also Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009) (applying the now-discretionary *Saucier* protocol post-*Pierson*). As will be shown infra, both the alleged constitutional violations and clearly established nature of the violations are supported in this case based on the alleged facts. Accordingly, the Court finds no reason to deviate from the *Saucier* protocol.

*Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)). "First, he must claim that the defendants' actions committed a constitutional violation under current law." *Id.* (quoting *Atteberry*, 430 F.3d at 253 (citing, e.g., *Wilson v. Layne*, 526 U.S. 603, 609) (1999)). "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (quoting *Atteberry*, 430 F.3d at 253).[4]

Plaintiffs claim that they were subjected to false arrest. Pls.' First Am. Compl. ¶ 25. "Claims of false arrest . . . involve the guarantees of the fourth and fourteenth amendments when the individual complains of an arrest . . . without probable cause." *Brown v. Lyford*, 243 F.3d 185, 189 n.7 (quoting *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988)). Moreover, "[t]he Fourth Amendment rule on warrantless arrests *is* 'clearly established law.' If an arrest lacks probable cause for its support, it is, objectively speaking, in violation of clearly established law." *Trejo v. Perez*, 693 F.2d 482, 488 n.10 (5th Cir. 1982), *abrogated on other grounds*, *Devenpeck v. Alford*, 543 U.S. 146 (2004)); *see also Club Retro*, 568 F.3d at 204 ("The Fourth Amendment right to be free from false arrest – arrest without probable cause – [is] clearly established [law]."); *Brown*, 243 F.3d at 189 ("The 'constitutional tort[]' of false arrest . . . require[s] a showing of no probable cause.").

"The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing,

---

[4] Ramos, Gamboa and Juarez all argue that in addition to the two-pronged analysis outlined above, "the court must determine whether the record shows a violation actually occurred or at least gives rise to a genuine issue of material fact regarding whether the conduct violated a clearly established right." Ramos's Mot. ¶ 5; Gamboa's Mot. ¶ 8; Juarez's Mot. ¶ 8 (citing *Morris v. Dearbourne*, 181 F.3d 657, 665 (5th Cir. 1999)). However, as these Defendants' own authority demonstrates, such a standard applies only to claims at the summary judgment stage and does not apply to motions to dismiss. *See Morris*, 181 F.3d at 665. As stated by the Supreme Court, "it is the defendant's conduct as *alleged in the complaint* that is scrutinized for 'objective legal reasonableness'" at the motion to dismiss stage. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (2002) (quoting *Behrens*, 561 U.S. at 309).

or is about to commit an offense.'" *Club Retro*, 568 F.3d at 204 (quoting *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979))). To satisfy the "no-probable-cause" standard necessary to defeat qualified immunity, Plaintiffs must "allege facts permitting an inference that defendants lacked [even] arguable (that is, reasonable but mistaken) probable cause for the arrests." *Id.* at 207 (citing *Babb v. Dorman*, 33 F.3d 472, 478 (5th Cir. 1994)); *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005)).

In support of their claim, Plaintiffs allege that when they passed Ramos on the road, the two cars passed each other without incident. Pls.' First. Am. Compl. ¶ 6. Plaintiffs allege that Ramos then pulled them over and asked Ivan several questions about the road on which he was driving. *Id.* ¶ 7. Dissatisfied with Ivan's responses, Ramos stated that he was arresting Ivan "for being a dumb-ass." *Id.* Ivan was later charged with felony assault on a peace officer, reckless driving, and resisting arrest. *Id.* ¶10. Guerrero was then arrested and charged with felony assault on a peace officer and interference with public duties. *Id.* Dominguez was then arrested and charged with interference with public duties. *Id.*

Taking the well-pleaded allegations as true, there is nothing that even remotely points to Ramos having probable cause that Plaintiffs had committed a crime when they were arrested. Indeed, Ramos's own alleged statement, that he arrested Ivan "for being a dumbass," belies any reliance on probable cause. *See* Pls.'s First Am. Compl. ¶ 7. The same is true regarding Ramos's reasoning for arresting Dominguez, where Dominguez did nothing to interfere with Ramos arresting Ivan. *See* Pls.' First Am. Compl. ¶ 9 ("Fuck it – Charge him with interference."). Moreover, Guerrero's alleged peaceful approach and pleading with Ramos to stop choking his son does not create probable cause for either felony assault, interference with a police officer or resisting arrest. Finally, Plaintiffs also allege that all charges against them were dropped. *Id.* Given these alleged facts and Ramos's failure to establish probable cause, Ramos's affirmative defense of qualified immunity fails for Plaintiffs' claims of false arrest.

Plaintiffs also claim that Ramos employed excessive force when he arrested Ivan, Guerrero and Dominguez. Pls.' First Am. Compl. ¶ 25. Use of excessive force is a recognized constitutional violation of the Fourth Amendment that was clearly established at the time this arrest took place. *See, e.g., Tarver*, 410 F.3d at 751; *Bush v. Strain*, 513 F.3d 492, 500-01 (5th Cir. 2008). Nevertheless, "while the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene." *Bush*, 513 F.3d at 502 (citing *Saucier,* 533 U.S. at 201-02). Accordingly "courts should examine the objective reasonableness of an officer's belief that a certain degree of force was lawful under the circumstances." *Id.* (citing *Saucier,* 533 U.S. at 205 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver*, 410 F.3d at 751 (citing *Harper v. Harris County, Tex.*, 21 F.3d 597, 600-01 (5th Cir. 1994)).

"[A]n injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible – that is, objectively unreasonable under the circumstances." *Bush*, 513 F.3d at 501 (citing, e.g., *Ikerd v. Blair*, 101 F.3d 430, 434-35 (5th Cir. 1996)). "The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Id.* (citing *Ikerd*, 101 F.3d at 434). "Specifically, the court should consider 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396).

In the instant case, the alleged facts show that none of the Plaintiffs had committed any crime at the time of their encounter with Ramos. Nevertheless, Ramos grabbed Ivan, choked

him, knocked him to the ground, twisted his right arm, punched and kicked him, and then smashed his face repeatedly into the pavement until Ivan eventually blacked out. *See* Pls.' First Am. Compl. ¶¶ 8-9. Because of this incident, Ivan suffered injuries to his head, face, eyes, ribs, nose, knees, arms, chest and back, as well as psychological injuries of extreme embarrassment and humiliation.[5] *Id.* ¶ 28. Similarly, Guerrero suffered injuries to his knees, wrist, legs, hands, neck and waist stemming from his unlawful arrest. *Id.* Dominguez also suffered injuries to his hands, wrists and shoulders incident to his arrest, and he suffered from pre-existing knee problems that became exacerbated when he was thrown to the ground. *Id.* Given the absence of any crime or need to arrest Plaintiffs, Ramos engaged in an unconstitutionally excessive use of force that was objectively unreasonable under the circumstances. In addition, the Court holds that Ramos's alleged behavior violated established law at the time of Plaintiffs' arrest.

As his only defense for his alleged actions, Ramos argues that "Plaintiffs merely assert conclusory allegations and unwarranted deductions of fact" and "fail to allege any actions by Defendant Ramos that would violate a clearly established Constitutional right." Ramos's Mot. ¶ 6. The Court finds the contrary to be true. Indeed, accepting the pleaded allegations as true, the Court would be hard-pressed to imagine a more clearly-alleged case of false arrest and excessive force than that alleged by Plaintiffs in the instant case. *See Bush*, 513 F.3d at 502 (force was clearly excessive when officer slammed plaintiff's face into nearby vehicle during her arrest, causing significant injuries, despite plaintiff being restrained, subdued, and not resisting arrest). Accordingly, Ramos's affirmative defense of qualified immunity fails for Plaintiffs claims of excessive force.

### 5. Plaintiffs' Fourth Amendment claims against Gamboa and Juarez

Gamboa and Juarez next argue that their lack of personal involvement in the events of February 28, 2008, preclude Plaintiffs' claims of false arrest and excessive force against them.

---

[5] The court notes that psychological injuries can serve as a basis for §1983 liability when sufficiently severe. *Tarver*, 410 F.3d at 751 (citing *Flores v. City of Palacios*, 381 F.3d 391, 400-01 (5th Cir. 2004)).

Gamboa's Mot. ¶¶ 5-6; Juarez's Mot. 5-6.  Gamboa and Juarez further argue that any claim regarding their failure to adequately train Ramos must also fail because Plaintiffs have failed to allege facts with requisite specificity to show a failure to train.  Gamboa's Mot. ¶ 7; Juarez's Mot. ¶ 7.  Finally, Gamboa and Juarez argue that they are protected by qualified immunity.  Gamboa's Mot. ¶¶ 8-9; Juarez's Mot. ¶¶ 8-9.

Plaintiffs' allegations demonstrate that neither Gamboa nor Juarez was personally involved in the events of February 28, 2008.  "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)).  Indeed, "[s]upervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . on any theory of vicarious liability or *respondeat superior* liability."  *Estate of Davis ex. rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 380-81 (5th Cir. 2005) (italics in original) (citing, e.g., *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  "Rather, Plaintiffs must show that the conduct of the supervisors denied [Plaintiffs their] constitutional rights."  *Id.* (citing *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)).  Because Gamboa and Juarez were not personally involved in the events of February 28, 2008, they may not be directly held liable for Plaintiffs' false arrest or Ramos's alleged use of excessive force.

However, Plaintiffs do not argue that Gamboa and Juarez are directly or vicariously liable for Plaintiffs' harms on February 28, 2008.  Rather, Plaintiffs argue that Gamboa and Juarez are liable for failing to adequately train Ramos.  Pls.'s Gamboa Resp. ¶¶ 12-20; Juarez's Mot. ¶¶ 12-20.  A claim of failure to train is a cognizable claim under § 1983 and abrogates a defense of qualified immunity.  *McCully*, 406 F.3d at 381; *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998); *Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008).  In order to demonstrate a claim of failure to train, Plaintiffs must allege that "(1) the supervisor either failed to supervise or

train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Id.* (citing *Smith*, 158 F.3d at 911-12). The Fifth Circuit has further stated that "a plaintiff seeking recovery under a failure to train or supervise rationale must prove that the [supervisor] failed to control an officer's known propensity for the improper use of force." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (citations and internal quotes omitted). In addition, to prove deliberate indifference, a plaintiff must show "at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Id.* (quoting *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).

Taking the well-pleaded facts as true, Plaintiffs have shown that Gamboa, Constable of Precinct Six, failed completely to provide Ramos with any training whatsoever. Pls.' First Am. Compl. ¶¶ 16-17. Plaintiffs have also alleged that Gamboa and Juarez "habitually failed to provide or refer deputy constables to needed training on crucial topics" and "habitually failed to properly supervise deputy constables under their authority . . ." *Id.* ¶¶ 18-19. Moreover, Plaintiffs have shown that both Gamboa and Juarez were aware of Ramos's violent propensities, his past false arrests and his past use of excessive force, yet they did nothing to either supervise him or limit his contact with the public. *Id.* Given Ramos's pattern of past violations, Gamboa's and Juarez's failure to train or supervise Ramos demonstrates a deliberate indifference to Plaintiffs' rights, making a constitutional violation obviously likely. *See Roberts*, 397 F.3d at 292.

The Court therefore holds that the allegations in Plaintiffs' First Amended Complaint adequately allege a claim of failure to train against both Gamboa and Juarez. Given Ramos's violations of Plaintiffs' clearly established constitutional rights, and given Gamboa's and Juarez's alleged failure to adequately train or supervise Ramos, Gamboa's and Juarez's affirmative defense

of qualified immunity fails.

### 6. Plaintiffs' Fourth Amendment claims against the County

The County argues that Plaintiffs Fourth Amendment claims fail against the County because the County cannot be vicariously liable for Ramos's behavior. County's Mot. ¶ 7. The County further argues that Plaintiffs fail to adequately allege a cause of action for failure to train. *Id.* ¶¶ 8-11, 13-14.

As in the case of supervisory liability, a municipality is not vicariously liable for the acts of its employees under § 1983. *See Whitt v. Stephens County*, 529 F.3d 278, 283 (5th Cir. 2008). "A 'municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue,' for example, by establishing an unconstitutional policy or custom." *Id.* (quoting *City of Canton*, 489 U.S. at 385 (citing *Monell*, 436 U.S. at 694-95)) (emphasis in *City of Canton*). Accordingly, like Gamboa and Juarez, the County may not be held vicariously liable for Ramos's constitutional violations.

Once again, however, Plaintiffs do not claim the County is vicariously liable for the other Defendants' actions. Pls.' County Resp. ¶ 14. Rather, Plaintiffs argue that the County is liable for its policy and custom of failing to train its deputy constables, a failure which Plaintiffs claim caused their injuries. *Id.*

"It is clear that a municipality's policy of failing to train its police officers can give rise to § 1983 liability." *Brown v. Bryan County, Ok.*, 219 F.3d 450, 457 (5th Cir. 2000) (hereinafter "Brown") (holding that a sheriff's failure to train a county deputy that resulted in constitutional violation could be county policy). Indeed, "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* (quoting *City of Canton*, 489 U.S. at 390).

A County's official policy may be established in several ways. An official policy may be "a policy statement, ordinance, regulation, etc., that has been officially adopted by a

policymaker[.]" *Burge*, 336 F.3d at 369 (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). A policy may also be "a persistent, widespread practice of officials and employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy." *Burge*, 336 F.3d at 369 (quoting *Bennett*, 735 F.2d at 862). Finally, liability may also attach in rare circumstances when it stems from a single decision by the municipal policymaker not to train an individual officer "even when there has been no pattern of previous constitutional violations." *Brown*, 219 F.3d at 459.

As in the case of supervisory liability, "[a] county's failure to train officers in appropriate procedures supports § 1983 liability 'only where the failure to train amounts to a deliberate indifference to the rights of the persons whom the [officers] come into contact.'" *Whitt*, 529 F.3d at 284 (quoting *City of Canton*, 489 U.S. at 388). In addition, Plaintiffs must show that "through its deliberate conduct, *the municipality* was the 'moving force' behind the injury alleged." *Bd. of County Comm'rs of Bryan County, Ok. v. Bryan*, 520 U.S. 397, 404 (1997) (hereinafter "*Bryan County*") (emphasis added).

In the instant case, Plaintiffs have not identified the County's official policymaker who is responsible for constable training.[6] Moreover, there are no allegations that the County had an officially-adopted policy statement that sanctioned a failure to train Ramos. Plaintiffs' First Amended Complaint does state however, that the County failed "to adequately screen, train, supervise, and discipline their officers . . . ." Pls.' First Am. Compl. ¶ 27. The Court must

---

[6] The law is clear that the official County policymaker is not Gamboa. *See Keenan v. Tejeda*, 290 F.3d 252, 263 (5th Cir. 2002) ("under Texas law, Texas county constables are not considered policy-makers in the area of law enforcement.") (citing *Rhode v. Denson*, 776 F.2d 107, 108-10 (5th Cir. 1985)); *see also Tonkin v. Harris* County, 257 Fed. App'x 762, 763 (5th Cir. 2007); (county not liable for constable's alleged civil rights violations because constable not final policymaker); *Frank v. Harris County*, 118 Fed. App'x 799, 800 (5th Cir. 2004) (actions of constable not attributable to county for §1983 purposes because constable not policymaker); *Drain v. Galveston County*, 979 F. Supp. 1101, 1103 (S.D. Tex. 1997) (same).

therefore determine if the failure to train Ramos represented a widespread custom in the County for which the County was aware or should have been aware. *Burge*, 336 F.3d at 369.

As stated above, Plaintiffs allege that Gamboa and Juarez completely disregarded Ramos's multiple constitutional violations and did nothing to either train him or other deputy constables. Plaintiffs also allege that this failure to train was widespread and involved all deputy constables in Precinct Six. The alleged facts therefore plausibly demonstrate a pattern or custom in the County of failing to train its officers. Indeed, the allegations show that Ramos's violations were so blatant and the County's training and supervision were so poor that "municipal decisionmakers may eventually [have been] put on notice that a new program is called for." *Bryan County*, 520 U.S. at 407. Therefore, failure to change the policy after the County became aware of the repeated violations plausibly demonstrates deliberate indifference to the rights of the public, including Plaintiffs. *Whitt*, 529 F.3d at 284. Accordingly, the County's failure to properly train Ramos and other constables could plausibly be regarded as the "moving force" behind Plaintiffs' injury. *See Bryan County*, 520 U.S. at 408-09.

Given the alleged facts, the Court holds that Plaintiffs have sufficiently pleaded a claim of failure to train against the County.

## III. CONCLUSION

Given Plaintiffs' well-pleaded allegations, Defendants' affirmative defenses of qualified immunity fail at this stage of the litigation.

Plaintiffs' state claims are **DISMISSED**.

Plaintiffs' Fourteenth Amendment equal protection claims are **DISMISSED**.

Defendant Ramos's Motion to Dismiss (**Doc. No. 31**) regarding Plaintiffs' § 1983 claims is **DENIED**.

Defendant Gamboa's and Defendant Juarez's Motions to Dismiss (**Doc. Nos. 32, 36**) regarding Plaintiffs' § 1983 claims are **DENIED**.

The County's Motion to Dismiss (**Doc. No. 33**) regarding Plaintiffs' § 1983 claims against the County is **DENIED**.

**SO ORDERED**.

**SIGNED** on this 29th day of July, 2009.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE